UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| QUINCY VAUGHN, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:19-CV-2566 JAR |
| THOMAS GULLETT, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 1081978), an inmate at Eastern Reception, Diagnostic and Correctional Center ("ERDCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $10.66. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint and the supplemental complaints, the Court will order plaintiff to submit a second amended complaint on a court-provided form in compliance with the instructions set forth below. Plaintiff's failure to do so will result in a dismissal of this action, without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make

monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $53.33. Accordingly, the Court will assess an initial partial filing fee of $10.66.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to, *inter alia*, draw upon judicial experience and common sense. *Id.* at 679.

Pro se complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, they still must allege sufficient facts to support the claims alleged. *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004); *see also Martin v. Aubuchon*, 623 F.2d 1282, 1286

2

(8th Cir. 1980) (even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 914-15. In addition, giving a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993).

### The Complaint and Motions to Compel/Supplemental Complaints

Plaintiff is an inmate at the Eastern, Reception Diagnostic and Correctional Center. He brings this action pursuant to 42 U.S.C. § 1983 against the following defendants, named in his complaint: Thomas Gullett (Correctional Officer); Dalton LaRue (Correctional Officer); Stan Payne (Warden); Cindy Griffith; Jeff Norman; Unknown Pacheco; Unknown Weir (Correctional Officer); Eric Friel (Correctional Officer); John Doe; and Jane Doe. Plaintiff brings this action against defendants in their official and individual capacities.[1]

Plaintiff filed a fifty-one-page (51) complaint on September 12, 2019. At the time of filing his complaint, he filed a motion to proceed in forma pauperis, as well as a motion for appointment of counsel. Since the time of filing his complaint, plaintiff has filed five motions to compel [Doc. #6, #8, #10, #11 and #13], a motion for preliminary injunction [Doc. #9] and a motion to issue summons [Doc. #14].

---

[1] Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. Missouri Department of Corrections employees are employed by the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* As a result, the complaint fails to state a claim upon which relief can be granted against defendants in their official capacities as it is currently plead.

3

In his complaint, plaintiff asserts several different claims against the named defendants in this action. Plaintiff's first main cause of action relates to an altercation that purportedly occurred at ERDCC on September 5, 2018.

Plaintiff claims that he was having trouble with his vision in his right eye, so he was admitted to the T.C.U. at ERDCC. Plaintiff believes he should have stayed in T.C.U. that day, but "white shirts" arranged to have him transferred back to his house, and then in the afternoon, Correctional Officers John Doe and Jane Doe came to get him out of his cell and started yelling at him about a letter they believed he had written. Plaintiff does not indicate what the purported letter pertained to, only that he told the officers that he had not written the letter. Plaintiff states that when the female officer realized that he "either knew something and wasn't talking or [he] really was telling the truth she gave a verbal directive to both of the officers to 'f-ck him up.'"

Plaintiff claims he was forced and yanked out of the room he was sitting in and pushed into the Administrative Segregation Unit by unnamed officers. Once in the Administrative Segregation Unit, plaintiff states that he told the officers that he "was not taking a cell." Plaintiff states that when they tried to assign him a cell he "checked out immediately." He was then assigned to sit on a bench for two hours, after which time he was taken to a new cell. Plaintiff then checked out of that cell (refused it), after which time he was sat on a bench for another two hours. He claims that at that time, he was taken to a double-man cell that was unoccupied.

Inside the cell, plaintiff states he was told to strip out. He claims that Correctional Officer Pacheco and Correctional Officer Weir were the assigned officers at the time in the room, although Pacheco was doing the talking. Plaintiff claims he complained to Pacheco that it was impossible to strip out with his handcuffs on and behind his back, but he was told that the

4

handcuffs were not coming off. Plaintiff complains that this was in violation of Missouri Department of Corrections Policy and Procedure as he understood the procedure.

Plaintiff states that he was told for a third time to strip out with his handcuffs on, and he told Pancheco he could not follow his instructions. Plaintiff claims that he was told by Pancheco that he would be given one last chance to strip out. When he didn't respond, Pacheco called a 10/10 on his radio and Correctional Officer Gullett responded to the cell. Gullett ordered plaintiff to strip out and plaintiff states that he asked Gullett "how?" Plaintiff states that Gullett began to imitate a monkey at this time, presumably making fun of plaintiff. Plaintiff alleges that Gullett again gave plaintiff the directive to strip out, and plaintiff again stated that he was unable to do so with his hands cuffed behind his back. Gullett told plaintiff to place his nose on the wall. Gullett then pulled plaintiff's pants and boxers down himself. Plaintiff states that he turned half around and sidestepped and told Gullett that he was going to report him under PREA[2]. Gullett responded that it wasn't a proper PREA complaint. Plaintiff asserts that it was at this point that Gullett "forcefully slammed [his] face into the wall and picked [him] up and slammed [his] face 1st into the concrete floor knocking [him] unconscious instantly." Plaintiff asserts that when he came to consciousness he was bleeding from the head and nose.

Plaintiff claims that his injuries to his face were significant as a result of the altercation. He asserts that he suffered a broken nose, a fracture to the right side of his nose, a tri-fracture directly under his right eye, several fractures to his cheekbone and a fracture to the right side of his face. He asserts that he had to undergo surgery to correct the fractures.

Plaintiff alleges that while he was recovering from surgery, on September 17, 2018, Eric Friel came to his cell door and stated, "This is what you get for disrespecting Captain Larue and our staff. . .for disrespecting the White Bluuds" Plaintiff believes this statement was in reference

---

[2] Prison Rape Enforcement Act.

to him writing up Correctional Officer Larue for making threats against plaintiff. Plaintiff also believes that the White Supremacist employees at the prison, who identify themselves as Bluuds, are against him.

Plaintiff seeks specific injunctive relief as well as compensatory and punitive damages in this action in his complaint.

## Motions to Compel/Supplemental Pleadings

Plaintiff currently has five pending motions to compel before the Court. A review of the motions to compel show that they are really supplements to plaintiff's complaint with allegations against new defendants rather than motions to compel relating to discovery abuse brought pursuant to Fed.R.Civ.P.37. The Court will outline the motions below.

On September 30, 2019, plaintiff filed a motion to compel seeking a court order requiring the Missouri Department of Corrections and ERDCC to follow what plaintiff believes to be the proper "strip out" procedure. He claims that specific officers at ERDCC are conducting "illegal" strip outs on inmates when they are transferred from General Population to Administrative Segregation. Plaintiff believes that it is illegal to have inmates strip out while they are restrained in single handcuffs. He seeks an order from the Court requiring the prison to implement strip outs with inmates while they are uncuffed. *See* Docket No. 6.

On October 9, 2019, plaintiff filed a motion to compel asserting that he was denied his legal casefile during his confinement in Administrative Segregation at ERDCC. He asserted that there was no reason for him to be placed in Administrative Segregation, as he had not been given a conduct violation. Plaintiff believes that this action was done in retaliation by defendant Stanley Payne, Warden at ERDCC. He seeks an order from this Court requiring defendant Payne

to return his casefile and to show cause as to whether he is under investigation for a conduct violation. *See* Docket No. 8.

On October 16, 2019, plaintiff filed a motion to compel seeking an order from this Court requiring the Missouri Department of Corrections not to "mix his medications" together. He states that several nurses have mixed his medications together, including Director of Nursing Melissa Unknown and Nurse Vicki Evans. Plaintiff states that when the nurses mix the medications together in water, they taste terrible and he refuses to drink the medications causing him to lose the medication pass. Plaintiff believes that the nurses are acting with retaliation against him. *See* Docket No. 10.

On October 30, 2019, plaintiff filed a motion to compel indicating that Warden Payne had failed to respond to his October 9, 2019 motion to compel and asking the Court to hold Warden Payne in violation of the October 9th motion. *See* Docket No. 11.

On November 8, 2019, plaintiff filed a motion for "order" seeking an immediate transfer to another prison within the Missouri Department of Corrections. In a conclusory manner, plaintiff complains that there is a "racist" drawing on his cell wall which depicts a black man hanging who is missing an eye. Plaintiff interprets the drawing as a threat from one of the defendants in the present action, and he seeks protection from the Court. Plaintiff believes the threat may be related to Correctional Officer Robinson who plaintiff believes denied him "labs" on the morning of November 4, 2019, when plaintiff complained to Robinson that he did not have the proper shoes to go to the lab and give blood. *See* Docket No. 13. Plaintiff states that Robinson told him, "You better be thinking of ways not to end up like that guy on the wall of your cell."

7

The Court does not accept supplemental pleadings, and additionally, all complaints and amended pleadings are to be submitted on a court-provided form. *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir.2008) (finding that it is appropriate to deny leave to amend a complaint when a proposed amendment was not submitted with the motion); *see also*, E.D. Mo. Local Rule 2.06(A).

**Discussion**

The Court has reviewed the complaint, the motions to compel/supplemental pleadings and believes that, although plaintiff may be able to assert claims based on the denial of his constitutional rights, he has improperly joined in this one lawsuit a multitude of defendants and his numerous claims against them. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Therefore, a plaintiff cannot join, in a single lawsuit, a multitude of claims against different defendants that are related to events arising out of different occurrences or transactions. In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits, . . . [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.*

Rule 18(a) of the Federal Rules of Civil Procedure, which governs joinder of claims, provides:

8

> A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

Therefore, multiple claims against **a single defendant** are valid. (emphasis added)

Because plaintiff is proceeding pro se, the Court will give him an opportunity to file an amended complaint. In so doing, plaintiff can only proceed with **one single transaction**, and limit the facts and allegations to the defendant(s) involved therein. Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose to select one defendant and set forth as many claims as he has against that single defendant. *See* Fed. R. Civ. P. 18(a).

**If plaintiff wishes to pursue additional claims against additional defendants, and the claims do not arise from the same transaction or occurrence he has chosen to advance in his amended complaint, he must file each such claim as a new civil action on a separate complaint form, and either pay the filing fee or file a motion for leave to proceed in forma pauperis.**

Plaintiff must prepare the amended complaint using a Court-provided form and must follow Rule 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 requires that the complaint contain a short and plain statement of the claim showing entitlement to relief. In the "Caption" section of the form complaint, plaintiff should write the name of the defendant(s) he wishes to sue. In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should: (1) set forth the factual allegations supporting his claim against that defendant; (2) state what constitutional or federal statutory right(s) that defendant violated; and (3) state whether the defendant is being sued in

9

his/her individual capacity or official capacity.[3] If plaintiff is suing more than one defendant, he shall proceed in this manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the allegations specific to that particular defendant and the right(s) that defendant violated.

Plaintiff is advised that he must allege facts that show how each defendant is causally linked to, and directly responsible for, violating his rights. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (§ 1983 liability arises only upon a showing of personal participation by defendant); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights). Plaintiff is also advised that, for an action to be allowed to proceed against a fictitious, or "Doe" defendant, the complaint must make sufficiently specific factual allegations to permit that defendant to be identified after reasonable discovery. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

Plaintiff shall have **twenty-one (21) days** from the date of this Order to file an amended complaint. Plaintiff is warned that the filing of the amended complaint completely replaces the original. Claims that are not re-alleged are deemed abandoned. *E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005).

### Motion for Injunctive Relief

In his motion for preliminary injunction, plaintiff requests that the Court Order the Missouri Department of Corrections to modify the job assignments of Correctional Officer Weir, who has been named as a defendant in this action, so that Weir is not assigned to any cells or units in which plaintiff might be housed.

---

[3] The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

Plaintiff asserts that on or about October 8, 2019, defendant Weir, while working in H.U.2B Wing, came to plaintiff's cell and told plaintiff that he was "docking" his recreation time. Weir purportedly told plaintiff, "Tell the Court that. Put that in your lawsuit."

Plaintiff believes that defendant Weir took his recreation time in retaliation for filing a lawsuit against him. Plaintiff has not provided any evidence for his claim other than the statement purportedly made by Weir as outlined above.

Not only does plaintiff seek a mandatory injunction reassigning Weir to another part of ERDCC, but he also seeks to reassign defendant Pacheco as well.[4] Plaintiff states that although Correctional Officer Pacheco "has not done or said anything to [him] so far, [he] doesn't want to give him the chance."

To determine whether preliminary injunctive relief is warranted, the Court must balance the threat of irreparable harm to movant, the potential harm to the nonmoving party should an injunction issue, the likelihood of success on the merits, and the public interest. *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted). "The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors." *Id.*

Although the Court is sympathetic with plaintiff's claims as to his loss of recreation time on one occasion, plaintiff has not met his burden in alleging that if defendant Weir is not reassigned, plaintiff will continue to lose his recreation time. Moreover, plaintiff has not shown that the loss of recreation time on one occasion necessitates placing a scheduling burden on the Department of Corrections/ERDCC to necessitate that defendant Weir never be assigned to a

---

[4] Plaintiff refers to defendant Pacher in his motion, however, there is a defendant Pacheco referred to in his complaint. The Court is unable to discern if this is the same individual.

housing unit with plaintiff. Furthermore, the Court cannot restrain defendant Pacheco because plaintiff fears that this defendant may retaliate against him in the future.

As such, the Court must decline to impose a mandatory injunction at this time.

## Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be unduly complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [Doc. #3] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $10.66 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff shall submit an amended complaint, in accordance with the Federal Rules of Civil Procedure and the instructions set forth in this Memorandum and Order, no later than **twenty-one (21) days** from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff two (2) blank forms for the filing of a prisoner civil rights complaint. Plaintiff may request additional forms from the Clerk, as needed.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #2] is **DENIED AT THIS TIME**.

**IT IS FURTHER ORDERED** that plaintiff's motions to compel [Doc. #6, #8, #10, #11 and #13] are **DENIED without prejudice.**

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction [Doc. #9] is **DENIED without prejudice.**

**IT IS FURTHER ORDERED** that plaintiff's request for service of process [Doc. #14] **is DENIED** as service will be effectuated by the U.S. Marshal's Office after review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and for failure to state a claim upon which relief may be granted.

**If plaintiff fails to timely comply with this Order, the Court may dismiss this action, without prejudice and without further notice**.

Dated this 5th day of December, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE