# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

QUINCY VAUGHN,                                      )
                                                   )
          Plaintiff,                      )
                                                   )
v.                                                 )         No. 4:19-CV-02566 JAR
                                                   )
THOMAS GULLETT, et al.,                            )
                                                   )
          Defendants.                     )

## MEMORANDUM AND ORDER

Plaintiff Quincy Vaughn ("Plaintiff"), proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 against three correctional officers in their individual capacities, namely Thomas Gullett ("Gullett"); Tyler Weir ("Weir"); and Travis Pacheco ("Pacheco") (collectively, "Defendants"). (Amended Complaint ("AC"), Doc. No. 17). Plaintiff's claim arises from an alleged incident of excessive force that occurred during a strip search while he was an inmate at the Eastern Reception Diagnostic and Correctional Center ("ERDCC")[1]. Plaintiff alleges that on September 5, 2018, Gullett assaulted Plaintiff while he was handcuffed by smashing his face into a concrete wall and body slamming him onto a concrete floor. Plaintiff further alleges Pacheco and Weir witnessed the assault but failed to intervene or protect him from Gullett's actions. Plaintiff sustained significant injuries to his face requiring reconstructive surgery. He seeks damages for pain and suffering, punitive damages, and injunctive relief.

Both Plaintiff and Defendants have moved for summary judgment on Plaintiff's claims. (Doc. Nos. 171, 176, 203).[2] Plaintiff asks the Court to also consider his motion as a response to

---

[1] Plaintiff was transferred to Southeast Correctional Center ("SECC") on August 3, 2021.

[2] On July 27, 2021, the Court granted the Attorney General's motion to withdraw as counsel for Defendant Travis Pacheco on the grounds that Pacheco "is no longer covered by the Legal Expense

Defendants' motion. Defendants object to Plaintiff's request, arguing he has not only failed to follow the Federal Rules of Civil Procedure and the Local Rules for the Eastern District of Missouri, but has also failed to adequately dispute their motion and plead his own. (Doc. No. 181). Plaintiff's status as a pro se prisoner does not excuse him from responding to Defendants' motion "with specific factual support for his claims to avoid summary judgment," or from complying with local rules, <u>Beck v. Skon</u>, 253 F.3d 330, 333 (8th Cir. 2001). However, his failure to respond properly to Defendants' motion does not mean summary judgment should be automatically granted in their favor. Even if the facts Defendants allege are not in dispute, those facts still must establish their entitlement to judgment as a matter of law. <u>Cross v. MHM Corr. Servs., Inc.</u>, No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014). The Court will therefore consider Plaintiff's responsive pleadings in determining whether Defendants are entitled to summary judgment. The Court notes that it appears Plaintiff has presented his motion for summary judgment without the benefit of his legal materials and case file. His inability to gain access to his legal materials has been an ongoing issue in this case since he was transferred to SECC in August of 2021 and the subject of numerous motions to compel.

**Legal standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted when, viewing the facts most favorably to the

---

Fund." (Doc. No. 123). Defendants Gullett and Weir, who have been continuously represented by the Attorney General's Office, filed their motion for summary judgment on February 3, 2022. (Doc. No. 171). On June 21, 2022, this Court reconsidered and vacated its order granting the Attorney General leave to withdraw and permitted Defendants to file any supplement to their pending motion for summary judgment in light of the Court's ruling. (Doc. No. 202). On July 1, 2022, Defendant Pacheco filed a supplemental motion for summary judgment, together with a supplemental statement of facts and supporting memorandum. (Doc. Nos. 203, 204, 205). Plaintiff's objection to the Attorney General's continued representation of Defendant Pacheco (Doc. No. 206) is overruled.

nonmoving party and giving that party the benefit of all reasonable inferences, the record shows there is no genuine issue of material fact. Smith v. Kilgore, 926 F.3d 479, 483 (8th Cir. 2019). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Gannon Intern., Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012). At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial. Smith v. Kilgore, 926 F.3d 479, 483 (8th Cir. 2019). There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id.

The movant's statement of facts is deemed admitted if not specifically controverted by the party opposing the motion. See Local Rule 4.01(E). Because Plaintiff did not respond to Defendants' Statement of Uncontroverted Material Facts ("SOF") (Doc. No. 173) in accordance with Local Rule 7–4.01(E), they are deemed admitted. Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing Deichmann v. Boeing Co., 36 F. Supp. 2d 1166, 1168 (E.D. Mo. 1999), aff'd 232 F.3d 907 (8th Cir. 2000)). Even so, where a plaintiff fails to respond to a motion for summary judgment, the Court should not treat such a non-response as sufficient to dispose of the motion. Lowry v. Powerscreen USB, Inc., 72 F. Supp. 2d 1061, 1064 (E.D. Mo. 1999) (citing Canada v. Union Electric Co., 135 F.3d 1211, 1213 (8th Cir. 1997)). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." Id. "In so ruling, even on an

unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." Id. Because Plaintiff is proceeding pro se, the Court will liberally construe his filings and consider his facts together with those facts deemed admitted.

Where parties file cross-motions for summary judgment, the legal standard does not change. Each motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp.3d 943, 947 (E.D. Mo. 2014).

**Facts**

On September 5, 2018, Plaintiff was being placed in Temporary Administrative Segregation Confinement ("TASC") status in administrative segregation. (SOF at ¶ 7). Missouri Department of Corrections ("DOC") policy (IS20-1.3) requires a strip search to be conducted when it is in the best interest of the security of the institution, such as placement in segregation. (Id.).

At the time of the incident, Plaintiff was secured to a security bench while Pacheco determined cell placement. (SOF at ¶ 8). Pacheco removed Plaintiff from the security bench and Weir escorted Plaintiff to cell 2D-114. (SOF at ¶ 11). Both Weir and Pacheco directed Plaintiff to comply with a strip search; Plaintiff refused. (SOF at ¶¶ 12, 13). Pacheco called Gullett for assistance with the strip search. (SOF at ¶ 14). When Gullett was unable to gain Plaintiff's compliance, he placed Plaintiff against the cell wall to conduct the strip search. (SOF at ¶¶ 15-17). Plaintiff continued to resist, broke free from Gullett's hold, and turned to face him. (SOF at ¶¶ 18, 22). Defendants were aware that Plaintiff had previously been convicted of assaulting a corrections officer. (SOF at ¶¶ at 19-21). To regain control of Plaintiff, Gullett took Plaintiff to

4

the floor and together with Weir and Pacheco completed the strip search. Defendants then exited Plaintiff's cell. (SOF at ¶¶ 23-25). Plaintiff suffered facial injuries as a result of the force used when he failed to comply with and resisted the strip search. (SOF at ¶ 26). An internal review conducted by a Use of Force Committee found the force employed was minimally necessary to control the incident and maintain good order and security. (SOF at ¶ 27).[3]

Following the incident, Plaintiff was examined by ERDCC medical staff. Plaintiff's MDOC medical records indicate that in the early morning hours of September 6, 2018, he was transported to Mercy Jefferson Hospital for a neurological consultation. (Doc. No. 192 at 13). A CT scan of Plaintiff's facial bones revealed multiple facial fractures, including a fracture of the right orbital (eye) socket, nasal bones, zygomatic arch (cheek bone), and maxillary sinus walls. (Id. at 20, 23, 30). Plaintiff was subsequently referred to an oral/maxillofacial specialist (id. at 21) and a surgical repair of the orbital fracture and ZMC complex fracture was performed on September 27, 2018 (id. at 87, 97). At a post-op visit on October 9, 2018, Plaintiff was reported to be healing well, with no follow up needed. (Id. at 153).

**Use of force claim against Defendant Gullett**

Defendants argue they are entitled to judgment as a matter of law on Plaintiff's excessive force claim against Gullett because the use of force was spontaneous, the amount of force was reasonable, and Plaintiff posed a security threat through his combative behavior. According to Defendants, Plaintiff was known to be dangerous due to a prior conviction for assaulting a corrections officer. During the incident, Plaintiff was argumentative and failed to comply with the strip search after several directives to do so. When Plaintiff resisted Gullett's efforts to conduct the strip search, Gullett "placed Plaintiff against the cell wall and began to conduct the

---

[3] There is a video recording of the incident which the Court has reviewed; however, it does not show what occurred inside the cell.

strip search." Gullett testified by affidavit that Plaintiff then resisted his attempts to conduct the search, fought his hold on Plaintiff, and turned to face him, at which point he "controlled Plaintiff by placing him on the floor." (Affidavit of Thomas Gullett, Doc. No. 173-2). Defendants maintain the use of force was minimal and that once Plaintiff was placed on the floor, no further force was used. Defendants reference the Use of Force Report finding the force used was appropriate and "minimally necessary to control the incident and maintain good order and security" to support their contention that the force used was reasonable.

In response to Defendants' motion (and as the basis for his own motion for summary judgment), Plaintiff notes he was handcuffed with his hands behind his back during the incident. Plaintiff also points to the severity of his injuries as evidence that the force used was excessive and notes that the Use of Force Report did not include a description of his injuries or that he required facial reconstructive surgery for multiple fractures in his nose and face. Plaintiff denies being aggressive or combative, and instead asserts that he could not comply with Defendants' directives to "strip out" because his hands were cuffed behind his back. (Deposition of Quincy Vaughn, Doc. No. 173-1 at 55:6-11). He testified at his deposition that when he put his nose against the wall as directed by Gullett, Gullett grabbed his pants and yanked them down aggressively. (Id. at 65:20-24). Plaintiff then stepped back and away from Gullett, not towards him, and said, "that's a PREA[4]." (Id. at 57:1-3, 14-20; 59:5-8; 90:1-6). It was Plaintiff's deposition testimony that Gullett then took his head and smashed it up against the wall; picked him up, and body slammed him, headfirst, to the concrete floor. (Id. at 57:18-25). Plaintiff doesn't remember anything after that. Plaintiff testified he still experiences pain daily in the right side of his face from the injuries he sustained, as well as side effects from his pain medications. (Id. at 76:13-77:15; 79:6-80-2; 80:3-81:5).

---

[4] Plaintiff is referring to the Prison Rape Elimination Act.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. Adams v. Hillis, No. 4:17 CV 1805 DDN, 2021 WL 1198060, at *3 (E.D. Mo. Mar. 30, 2021) (quoting Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)); Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017). See also Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.").

"Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of the individual case or the particular prison setting." Johnson, 453 F.3d at 1113 (internal quotation marks and quoted cases omitted). Factors to be considered in deciding whether a particular use of force was reasonable include "the objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers," and "the extent of the inmate's injury." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (citing Hudson, 503 U.S. at 7). In considering an excessive use of force claim, the Court weighs the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants '[would] support a reliable inference' of an unnecessary and wanton infliction of pain." Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Johnson v. Bi-State Justice Ctr./Ark. Dep't Corr., 12 F.3d 133, 136-37 (8th Cir. 1993)). In weighing these factors, however, the Court is required to "avoid[] the improper resolution of credibility issues," which are

assessments for the trier of fact and not for summary judgment. Id. (quoting Johnson, 12 F.3d at 137). At the summary judgment stage in an excessive force case, when the plaintiff and defendant give conflicting accounts and there is no evidence that blatantly contradicts the plaintiff's account such as a video or audio recording, the plaintiff's credibility is a jury question. Coker v. Arkansas State Police, 734 F.3d 838, 843 (8th Cir. 2013).

Upon review of the record presented, the Court finds a genuine dispute of material fact as to whether Gullett's use of force was reasonable. See Ross v. Carver, No. 4:19CV2971-SNL, 2022 WL 1480239 (E.D. Mo. May 10, 2022) ("[A] jury could reasonably conclude that [defendant] failed to act in good faith when he slammed [plaintiff] to the floor and punched and choked him given that [plaintiff's] wrists were restrained[.]"); Bell v. Lombardi, No. 4:14-CV-0027 (CEJ), 2016 WL 245405, at *2 (E.D. Mo. Jan. 21, 2016) (finding a genuine dispute of material fact for a jury to determine whether the officers' use of force on plaintiff was reasonable after he was fully restrained with his hands cuffed behind his back and his legs shackled). Here, a reasonable jury could conclude that the amount of force used was unjustified since Plaintiff was already restrained, reducing any threat to the safety and security of the institution. Smith v. Conway County, Ark., 759 F.3d 853, 860-61 (8th Cir. 2014). While Plaintiff's previous assault conviction may have warranted extra precautions, "[i]t is not constitutionally permissible for officers to administer a beating as punishment for a prisoner's past misconduct." Skrtich v. Thorton, 280 F.3d 1295, 1302 (11th Cir. 2002) (cited by Bell, 2016 WL 245405, at *4).

Furthermore, "[t]he extent of injury may also provide some indication of the amount of force applied." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). Following the incident, Plaintiff was taken first to the prison medical unit, and then transported to Mercy Jefferson Hospital for a neurological consultation. A CT scan revealed multiple facial fractures, including a fracture of

the right orbital (eye) socket, nasal bones, zygomatic arch (cheek bone), and maxillary sinus walls, that resulted in facial reconstructive surgery. Under these circumstances, the Court finds the injuries Plaintiff sustained as a result of his encounter with Gullett were severe and may support a conclusion that the force used was excessive. Defendants do not dispute that Plaintiff suffered injuries requiring surgery but assert that "any dispute as to the reasonableness of Gullett's use of force is *mere* and does not give rise to an inference of unnecessary and wanton infliction of pain." (Doc. No. 181 at 7) (emphasis in the original). The Court disagrees. A jury could reasonably conclude, based on Plaintiff's testimony and other relevant factors such as the nature and extent of his injuries and whether Defendants reasonably perceived a security threat, that Gullett failed to act in good faith when he slammed Plaintiff to the floor even though Plaintiff was restrained, with his hands cuffed behind his back, and moving away from Gullett rather than towards him in a threatening manner. Because a genuine issue of material fact remains as to whether Gullett's use of force against Plaintiff was reasonable under the unique circumstances of this case, the Court denies summary judgment in favor of either party on Plaintiff's excessive force claim against Gullett.

**Failure to intervene claim against Defendants Weir and Pacheco**

Under § 1983, correctional officers can be liable for failing to intervene and protect a prisoner if they observe the use of excessive force and had an opportunity to intervene and stop it, but unreasonably failed to do so. Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012) (citing Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981)); Pearson v. Gittemeier, No. 2:19-CV-41 RLW, 2022 WL 278750, at *5 (E.D. Mo. Jan. 31, 2022). It is important to note, however, that the officer must have "a realistic opportunity" to intervene. Barrientez v. Jefferson Cnty., No. 4:12CV179 HEA, 2016 WL 915188, at *4 (E.D. Mo. Mar. 10, 2016) (quoting Rohrbough v.

Hall, No. 4:07CV00996 ERW, 2008 WL 4722742, at *5 (E.D. Mo. Oct. 23, 2008), aff'd in part, appeal dismissed in part, 586 F.3d 582 (8th Cir. 2009)). Where the use of force only lasts a few seconds, non-participating bystander officers do not have a "realistic opportunity" to respond. Rohrbough, 2008 WL 4722742, at *5 (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990)).

By his own account, Plaintiff was noncompliant with Defendants' directives and resisted the strip search. As a result, some use of force was appropriate. The issue as Plaintiff describes it, and based upon the extent of his injuries, is whether the force used was excessive. Plaintiff points to no facts indicating that either Weir or Pacheco knew or had reason to know that excessive force would be used against Plaintiff or that they had a realistic opportunity to intervene. In fact, the video recording of the incident shows that Weir and Pacheco were standing outside of the cell during the incident. As discussed above, the use of force was spontaneous and brought on by Plaintiff's actions. Further, the use of force was extremely brief, only lasting for the length of time it took for Plaintiff to be brought to the floor. Once on the floor, no further force was used. Under these circumstances, no reasonable juror could determine that Weir and Pacheco are liable for failing to intervene during that use of force. If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Plaintiff cannot meet his burden on his failure to intervene claim. Therefore, summary judgment will be granted to Weir and Pacheco on this claim.

**Qualified immunity**

Lastly, Gullett, the sole remaining defendant, asserts entitlement to qualified immunity on Plaintiff's claims. The doctrine of qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known. Pearson v. Gittemeier, No. 2:19-CV-41 RLW, 2022 WL 278750, at *3 (E.D. Mo. Jan. 31, 2022) (citing Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To resolve a government official's claim of qualified immunity, courts apply a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation. Id. (citing Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing Harlow, 457 U.S. at 818). If genuine disputes of material fact underlie either prong of the qualified immunity inquiry, the district court may not resolve the disputes of fact and qualified immunity must be denied. See Wealot v. Brooks, 865 F.3d 1119, 1125 (8th Cir. 2017); Pearson v. Woodson, No. 4:18 CV 522 (JMB), 2019 WL 2774361, at *5 (E.D. Mo. July 2, 2019) ("At the summary judgment stage, granting qualified immunity is not appropriate where … a dispute remains regarding facts material to the qualified immunity issue.").

Gullett does not argue that Plaintiff's right to be protected from the excessive use of force was not clearly established at the time of the alleged incident. Instead, Gullett argues that Plaintiff has no evidence to support his claims. However, as explained above, Plaintiff has presented sufficient evidence which, if believed, would permit a reasonable jury to conclude that Gullett violated his constitutional rights. Accordingly, Gullett is not entitled to qualified immunity on Plaintiff's excessive force claim.

**Conclusion**

Based on the circumstances of this case, including the nature and extent of Plaintiff's injuries, which include multiple facial fractures, and the fact that Plaintiff was handcuffed behind his back at the time of the incident, the Court finds a genuine issue of material fact remains as to whether Gullett's use of force against Plaintiff was reasonable. The Court will, therefore, deny summary judgment on Plaintiff's excessive force claim and on Gullett's qualified immunity claim. The Court will grant summary judgment in favor of Defendants Weir and Pacheco on Plaintiff's failure to intervene claim because the facts do not support a finding that they had any realistic opportunity to intervene.

Pursuant to the Court's Case Management Order (Doc. No. 51), the case will be set for trial by separate order. Over the course of this litigation, Plaintiff filed numerous motions for appointment of counsel which the Court denied given the lack of factual or legal complexity and Plaintiff's demonstrated ability to adequately present his claims to the Court. Plaintiff currently has a motion for appointment of counsel pending. (Doc. No. 208). Now in light of the disputed facts and the procedural posture of the case, the Court will appoint counsel for Plaintiff by separate order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [176] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Thomas Gullett and Tyler Weir's Motion for Summary Judgment [171] is **DENIED** as to Defendant Gullett and **GRANTED** as to Defendant Weir in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that Defendant Travis Pacheco's Supplemental Motion for Summary Judgment [203] is **GRANTED** in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel [208] is **GRANTED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's request for dismissal as it pertains to Defendant Pacheco [210] is **DENIED as moot.**

A separate Partial Judgment accompanies this Memorandum and Order.


Dated this 29th day of September, 2022.


**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**